**GRANOVSKY & SUNDARESH, PLLC**
Denise Rubin Glatter (dglatter@g-s-law.com) (DG-7742)
48 Wall Street, 11th Floor
New York, New York 10005
Telephone: 646-524-6001
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
JOHN G. MARTIN,                                          Civil Action No. 21-cv-6023

               Plaintiff,

                                   **COMPLAINT**

      -against-

VICE MEDIA LLC and VICE FOOD LLC.,                **JURY TRIAL DEMANDED**


               Defendants.
-------------------------------------------------------------------X

      Plaintiff John G. Martin ("Mr. Martin" or "Plaintiff"), by and through his undersigned

counsel, Granovsky & Sundaresh, PLLC, as and for his Complaint against VICE Media LLC and

VICE Food LLC (collectively, "VICE" or "Defendants") alleges as follows:

**NATURE OF THE CLAIMS**

      1.      VICE owes Mr. Martin no less than $443,110.83 in unpaid wages, plus VICE

refuses to relinquish possession from its Brooklyn office of Mr. Martin's taxidermy grizzly bear,

affectionately nicknamed, Juicebox (the "Bear").

      2.      Despite written contracts and repeated oral promises and assurances, VICE never

paid Mr. Martin his contractually guaranteed salary of $150,000 per year from July 1, 2015,

through the end of his employment with VICE on May 21, 2021.

      3.      Mr. Martin engaged in consistent and countless efforts via e-mail and in-person

discussions with VICE to remedy the annual salary shortfall and growing back pay arrears up to

1

the May 21, 2021 end of his employment. However, the passage of time and the revolving door of nine (9) bosses supervising Mr. Martin from 2015 through May 21, 2021 (most of whom remained less than a year) rendered each new boss increasingly attenuated from his 2015 Employment Agreement (defined below), his 2017 Commission Agreement (defined below), and oral promises and assurances made to Mr. Martin in 2015-2017. The ongoing personnel changes in Human Resources at VICE ("Human Resources")—which served both VICE Media LLC and VICE Food LLC—further precluded resolution of these issues since Mr. Martin dealt with at least five different people in Human Resources during the relevant period of time. VICE never paid Mr. Martin the promised $150,000 annual salary or the back pay arrears.

4. His compensation in the years before July 1, 2015 (in the role of Publisher, including as Publisher, Munchies/VICE Food) and his actual responsibilities mark a sharp contrast from the compensation VICE paid Mr. Martin thereafter. In 2012 thorough mid-2015, Mr. Martin earned no less than $118,181,51 and as much as $455,464.15. Mr. Martin continued in the role of Publisher, Munchies/VICE Food from July 1, 2015, through May 21, 2021, where he ran the profitable Munchies digital, "vertical" business unit at VICE (valued at approximately $20,000,000) and supervised up to twenty (20) employees. Despite his duties, starting July 1, 2015, he was, at times, paid less than the employees he supervised and certainly paid radically less than other VICE employees with commensurate responsibilities.

5. Beyond failing to pay Mr. Martin his annual $150,000 salary, he was paid no salary from July 1, 2015, through December 31, 2015, and paid less than the annual New York State minimum wage in 2016. Notwithstanding his job duties, his actual compensation rendered him eligible for both overtime compensation (since he worked no less than an average of fifty

(50) hours per work week[1]) and for spread-of-hours pay for days in which he worked more than ten (10) hours which VICE, nonetheless, also failed to pay to him. Accordingly, and alternatively to Mr. Martin's claim for payment of back pay arrears based on his contractually guaranteed $150,000 annual salary, these failures had the effect of rendering Mr. Martin an exempt employee under the New York Labor Law ("NYLL") and New York Wage Orders who is owed back pay and all other forms of compensation under applicable provision of the NYLL.

6.     Mr. Martin, nonetheless, stayed at VICE. Among other reasons, he believed the VICE-prepared documents supporting his entitlement to the $150,000 annual salary and the oral promises and assurances made to him in 2015-2017 would prevail. Plus, departure would mean forfeiting Mr. Martin's substantial VICE equity.

7.     Following VICE's termination of Mr. Martin—and despite due demand through counsel starting in June 2021—VICE refused to relinquish possession of the Bear, an approximately 5'6" tall, life-size, taxidermy grizzly bear belonging to Mr. Martin. The Bear is from an animal pelt gifted to Mr. Martin in Spring 2010 by the Alaskan hunter who downed the Bear in Mr. Martin's presence in the Arctic National Wildlife Refuge in Fall 2009. It is an irreplaceable reflection of the friendship between Mr. Martin and the Alaskan hunter. Through counsel, on July 1, 2021, and September 1, 2021, Mr. Martin provided VICE with extensive documentation reflecting his superior right to possession of the Bear and that he is lawfully entitled to possess the Bear. Regardless, VICE refused to relinquish possession of the Bear and refused Mr. Martin's offer (through counsel) to have a moving company pick up the Bear from VICE's Brooklyn office in September 2021.

---

[1] Mr. Martin reserves the right to increase the number of hours worked each week once he examines VICE's employment and other records.

8.      Through this Complaint, Mr. Martin seeks monetary relief of no less than $443,110.83, together with, as applicable, liquidated damages equal to one hundred percent of the total wages due, plus attorneys' fees and pre-judgment interest, sounding in breach of contract, quantum meruit, unjust enrichment, and violations of NYLL §§ 191, 193, and 198 arising from VICE's failure to pay Mr. Martin's salary at the contractually agreed annual rate such that illegal deductions were made from his wages in violation of NYLL § 193. Alternatively, from July 1, 2015 through December 31, 2016, Mr. Martin's salary fell below the minimum wage under the applicable New York Wage Orders and in violation of the NYLL, so he was not paid for overtime for hours worked in excess of forty (40) per week nor spread-of-hours compensation for days in which he worked more than ten (10) hours, all of which is also in violation of the NYLL §§ 191, 198, and 650 *et seq.* and accompanying New York Wage Orders (12 NYCRR 142, *et seq*). Mr. Martin is also entitled to recover the maximum damages under NYLL § 195(3) for VICE's failure to provide wage statements, and/or accurate wage statements. In connection with the Bear, Mr. Martin seeks its recovery through a replevin action and declaratory judgment of his undisputed title to the Bear. In the alternative, by refusing to return the Bear, Defendants have also unlawfully converted Mr. Martin's personal property to VICE's possession and control.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as this action is between citizens of different states, resulting in complete diversity of citizenship, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in New York.

11.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2), (c)(2), and (d).

## PARTIES

12.     Plaintiff Mr. Martin is an individual residing in Cheshire County, New Hampshire. Mr. Martin worked for VICE from 2002 through May 21, 2021, and he met the definition of an "employee" under all applicable statutes.

13.     Upon information and belief, and based on research through the Secretary of State, Division of Corporations for both the States of Delaware and New York and other publicly available information, Defendant VICE Media LLC is a Delaware Limited Liability Company, registered to do business in New York, with its principal place of business at 49 South 2nd Street, Brooklyn, New York 11249. VICE Media LLC is a multimedia entity, and, upon information and belief, VICE Media LLC is a parent to VICE Food LLC and/or otherwise a related affiliate or corporate entity to VICE Food LLC. As a privately held limited liability company, information is not publicly available about its members. At all relevant times, VICE Media LLC met the definition of "employer" under all applicable statutes.

14.     Upon information and belief, and based on research through the Secretary of State, Division of Corporations for both the States of Delaware and New York and other publicly available information, Defendant VICE Food LLC is a Delaware Limited Liability Company, registered to do business in New York, with its principal place of business at 49 South 2nd Street, Brooklyn, New York 11249. Upon information and belief, VICE Food LLC is a subsidiary, division, affiliate, and/or otherwise a related corporate entity to VICE Media LLC. As a privately held limited liability company, information is not publicly available about its members. At all relevant times, VICE Food LLC met the definition of "employer" under all applicable statutes.

15.     In 2015, 2016, and 2017 Mr. Martin's IRS Form W-2 identified VICE Media LLC as his employer. In 2018, Mr. Martin's IRS Form W-2 named VICE Food LLC as his employer. In 2019 and 2020, Mr. Martin's W-2s reflected "VICE Foods" as his employer.[2] Although Mr. Martin's IRS Form W-2 for 2021 will not be sent until January 2022, his most recent wage statement identified VICE Food LLC as his employer. Despite the different VICE entities listed on Mr. Martin's IRS Form W-2, Mr. Martin at all times engaged with the same VICE Media LLC Human Resources personnel and reported to work at the common VICE office in Brooklyn since VICE Food LLC did not exercise separate control over labor relations or have separate offices for VICE Food LLC. Moreover, each of his W-2s since 2016 (and his most recent wage statement) list a common business address, regardless of the issuing VICE entity. Based on the foregoing, along with the allegations of this Complaint, VICE Media LLC and VICE Food LLC may be deemed a single employer due to common ownership, common management, interrelationship of operations, and/or centralized control over labor relations and be deemed jointly and severally liable for all damages sought through this Complaint.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION
### Mr. Martin's Employment at VICE

16.     Mr. Martin began working at VICE in 2002 as a salesperson compensated solely on a commission basis.

17.     Mr. Martin advanced through numerous positions and, from 2011 through December 2015, he held the position of Publisher, VICE Magazine.

---

[2] Searches through the Secretary of State, Division of Corporations for both the States of Delaware and New York and other publicly available information, reveals no distinct entity known as "VICE Foods" as distinguished from "VICE Food LLC." Should discovery support the existence of such an entity, Mr. Martin reserves the right to amend the Complaint to add such a party as an additional defendant.

18. Starting in 2014, Mr. Martin also held the position of Publisher, Munchies/VICE Food, a position he held through May 21, 2021.

19. In each of these two Publisher roles, Mr. Martin had extensive responsibilities. Based on a 2016 Publisher job description, his duties included the following categories—each of which had multiple accompanying tasks—(i) topline revenue management (such as setting goals for revenue), (ii) executional oversight of commercial programs (such as working with internal teams), (iii) product and materials creation (such as defining brand mission and identifying goals for vertical in conjunction with editorial), (iv) strategic partnerships (such as identifying and developing media, technology, platform, or social partnerships to grow brand, audience, and revenue), (v) key account sales (such as identifying and owning 10-15 key accounts), and (vi) general site responsibilities (such as ensuring site missions leads to brand relevance in the marketplace). Moreover, Publishers were considered "knowledge leaders" for VICE with a role as specialists across the organization. Publishers were also required to have seven-plus years of experience, including experience managing and supervising other employees and external partners. As Publisher, Munchies/VICE Food, Mr. Martin supervised as few as three employees and as many as twenty employees.

20. Commensurate with his increasing responsibility, in 2012, 2013, and 2014, Mr. Martin's W-2s reflected wages of $123,096.88, $118,181,51, and $455,464.15, respectively. Due to his success and high rate of earned commissions in 2014 and his pace of earning more in 2015 (he ultimately earned $292,289.09 in the first half of 2015), Mr. Martin and other similarly situated employees were, on July 1, 2015, converted to an annual salary of approximately $150,000 because VICE thought they earned too much money.

21.     To that end, Mr. Martin believes that his VICE colleagues, who were contemporaneously moved from a commission-based payment structure to a salary-based one, effective July 1, 2015,[3] actually received the promised salary increase to $150,000 from VICE, but Mr. Martin did not.

22.     Mr. Martin was, at all times, an at-will employee of VICE.

### VICE Issued Written Agreements and Provided Oral Promises and Assurances

23.     On September 1, 2015—two months after Mr. Martin's peers were (upon information and belief) already receiving their $150,000 salary—VICE's Vice President, Global Human Resources, Nancy Ashbrooke, e-mailed Mr. Martin an employment agreement backdated to an effective date of July 1, 2015, identifying his annual salary as $150,000 with a bonus formula at the end of the document (the "2015 Employment Agreement").  Ms. Ashbrooke's e-mail stated, "As promised, here is your updated employment agreement. Also attached are details of your new compensation structure. Let me know what questions you have."

24.     On September 10, 2015, Mr. Martin signed and returned to Ms. Ashbrooke a hard copy of the 2015 Employment Agreement and retained a hard copy for his records.

25.     Yet, the $150,000 annual salary for his role as Publisher, Munchies/VICE Food was not effected, despite the clear terms of the 2015 Employment Agreement.

26.     Mr. Martin addressed this oversight with his then-boss Richard Beckman, but Mr. Beckman left in March 2016, and the annual salary shortfall was not resolved before he left.

27.     Mr. Martin continued his efforts to effect his $150,000 annual salary.

---

[3] The Parties entered into tolling agreements, dated July 13, 2021 and August 27, 2021 pursuant to which the applicable statute of limitations for Mr. Martin's claims were extended to October 29, 2021.  Accordingly, the six-year statute of limitations pursuant to CPLR 213 was extended to that date.

28.     Although he received just $14,166.61 in wages in 2016, Human Resources

provided a June 14, 2016, letter verifying his employment with VICE and identifying "his

current yearly salary" at the radically higher rate of $292,289.09. During this same period of

time, James Schwab, the Co-President of VICE also orally promised and assured Mr. Martin that

he knew there were issues with Mr. Martin's compensation and that Mr. Martin would be taken

care of.

29.     But VICE did not resolve the issues.

30.     In 2017, Mr. Martin made progress addressing the $150,000 annual salary and

increasing back pay arrears with Tom Punch, VICE's Chief Commercial Officer. Accordingly,

VICE again confirmed Mr. Martin's $150,000 salary in a Commission Agreement signed by its

Vice President, Global Human Resources, Nancy Ashbrooke (the "2017 Commission

Agreement"). On August 22, 2017, VICE's Ashely Ascencio, a Human Resources Manager,

Digital, e-mailed the 2017 Commission Agreement to Mr. Martin (reflecting the same position of

Publisher, Munchies/VICE Food) and instructed him, "After you have reviewed and decided

upon its contents, please return a signed copy to me."  Mr. Martin followed Ms. Ascencio's

instructions by signing the 2017 Commission Agreement on September 7, 2017, and

contemporaneously returning a hard copy to her and retaining a hard copy for his records.  The

inclusion of his $150,000 annual salary in the 2017 Commission Agreement memorialized the

oral promises and assurances made to Mr. Martin between 2015-2017 by VICE personnel that he

would be paid his promised salary and that the back pay arrears would be resolved.

31.     Ms. Ashbrooke's departure in late-2017 (in connection with the #MeToo scandal),

combined with Mr. Punch's departure/reassignment in which Mr. Martin was no longer in

contact with Mr. Punch, caused the resolution of the salary shortfall and back pay arrears to, again, remain unresolved.

32.     The failure to pay Mr. Martin his promised $150,000 salary appears to be rooted in VICE's inconsistent administrative structure illustrated by three facts. First (and as referenced above), from 2015 through May 21, 2021, Mr. Martin was supervised by a revolving door of nine (9)) bosses, most of whom remained less than a year and each of whom, despite Mr. Martin's discussion of the annual salary short fall and back pay arrears with each of them, became increasingly attenuated from the promises first made to Mr. Martin by VICE in July 2015 which were memorialized in the 2015 Employment Agreement and 2017 Commission Agreement, along with oral promises and assurances made by VICE personnel to Mr. Martin from 2015-2017.  Second, a loose administrative structure within VICE failed to implement and effectuate the $150,000 annual salary, which was compounded by personnel changes within Human Resources at VICE.  Third, since Mr. Martin was promised a better deal than the other similarly situated employees who were immediately shifted to a $150,000 annual salary on July 1, 2015, and Mr. Martin's 2015 Employment Agreement was presented to him two months later on September 1, 2015, the administrative steps were never taken to effect his salary increase.

**Mr. Martin Continued to Seek Enforcement of the $150,000 Annual Salary**

33.     In the absence of Ms. Ashbrooke and Mr. Punch, Mr. Martin continued to seek a remedy of the annual salary shortfall and increasing back pay arrears, but new VICE personnel were unfamiliar with the relevant facts, documents, and oral promises and assurances made to Mr. Martin from 2015-2017.

34.     In 2018-2019, Mr. Martin engaged with three other individuals in Human Resources, and, based on a company-wide salary analysis, his annual salary was finally increased

to $120,000, effective December 31, 2018, and with subsequent interim increases (supporting the quality of Mr. Martin's job performance), ultimately landed at $145,000, effective September 1, 2019, and through the end of his VICE employment. Throughout this period, Mr. Martin continued to seek the $150,000 annual salary, and he did not deem these increases a resolution of his longstanding annual salary and back pay arrears.

35.     In 2019-2020, Human Resources personnel referred Mr. Martin to VICE's Global VP of Finance and Operations in effort to resolve the annual salary shortfall sand back pay arrears. Although he was receptive to Mr. Martin's efforts to address the back pay arrears (including proposing issuance of stock to compensate Mr. Martin for the arrears), the issue remained unresolved after this same individual took a leave of absence from VICE in December 2019 and was later terminated in June 2020.

36.     Mr. Martin continued to engage with VICE Human Resources personnel in 2020-2021 to resolve the annual salary shortfall and increasing back pay arrears.

37.     When Mr. Martin was terminated from VICE, effective May 21, 2021, neither problem was resolved.

### VICE Never Paid Mr. Martin His $150,000 Annual Salary

38.     Although Mr. Martin consistently held and successfully performed in the position of Publisher, Munchies/VICE Food throughout the relevant period of July 1, 2015, through May 21, 2021, and despite the 2015 Employment Agreement, the 2017 Commission Agreement, and oral promises and assurances from VICE personnel in 2015-2017, VICE never paid the contractually promised annual salary of back pay arrears.

39.     Instead, starting on July 1, 2015, through December 31, 2015, VICE paid no wages, overtime compensation, or spread-of-hours compensation to Mr. Martin rendering Mr. Martin's compensation below the applicable $8.75 per hour New York State minimum wage.

40.     In 2016, VICE paid Mr. Martin just $14,166.61—a rate so low it did not meet the applicable New York State minimum wage level of $9.00 per hour and reflective of neither overtime nor spread-of-hours compensation.

41.     Accordingly, in the second half of 2015 and throughout 2016, Mr. Martin supervised VICE employees who, by dint of applicable law, were, upon information and belief, compensated better than him.

42.     In 2017, VICE paid Mr. Martin the then-applicable lowest annual wage for exempt employees, $42,900. Although Mr. Martin received increasing annual wages of $53,645.67 (in 2018), $138,000 (in 2019), $145,000 (in 2020),[4] and $55,769.20 (from January 2021 through May 21, 2021 at the $145,000 level), VICE never paid Mr. Martin the $150,000 annual salary promised with his 2015 Employment Agreement, which was re-confirmed in his 2017 Commission Agreement, and which was consistent with intervening oral promises and assurances on which Mr. Martin relied.

43.     The radical change in Mr. Martin's wages starting on July 1, 2015, was not accompanied by a change in his job duties as Publisher, Munchies/VICE Food. Instead, as he had before July 1, 2015, Mr. Martin continued performing the same work, but now for radically less compensation than he earned in 2012, 2013, 2014, and the first half of 2015. In addition, from July 1, 2015, through May 21, 2021, Mr. Martin supervised multiple employees, worked (on

---

[4] Mr. Martin's 2019 and 2020 W-2s reflect slightly different wages, $147,641.86 and $137,375.72, respectively, than the annual rates of which VICE notified Mr. Martin. Regardless, his noticed annual salary and W-2 wages never reflected the promised $150,000 annual salary. The calculation of his damages will be adjusted as necessary through discovery.

average) 50 hours per week, and ran the profitable Munchies digital, "vertical" business unit at VICE, valued at approximately $20,000,000.

44.     While never waiving his entitlement to the $150,000 annual salary and despite VICE's ongoing failure to pay the $150,000 annual salary, Mr. Martin stayed at VICE for many reasons. First, Mr. Martin believed the annual salary shortfall would be worked out and back pay arrears provided based on two written agreements from VICE, the 2015 Employment Agreement and the 2017 Commission Agreement, both of which were prepared by VICE and both of which identified his $150,000 annual salary level. Second, Mr. Martin relied on oral promises and assurances from VICE personnel from 2015-2017 that these issues would be resolved—a valid position since the 2017 Commission Agreement reaffirmed Mr. Martin's $150,000 annual salary. Third, Mr. Martin continued working at a job he liked for a company he liked believing that the lagging annual salary and increasing back pay arrears would be best resolved if he remained, a perspective further supported by the oral promises and assurances of VICE personnel from 2015-2107 with whom Mr. Martin discussed these issues. Fourth, VICE granted Mr. Martin valuable Stock Options on October 17, 2011, and performance-based restricted stock units ("PRSUs") on April 29, 2015, both of which would be forfeited if he left VICE. Fifth, his busy VICE work and travel schedule and his extensive responsibilities as Publisher, Munchies/VICE Food, limited the time available to him to address these issues with VICE personnel. Sixth, the substantial compensation he earned in 2014 and 2015 helped financially sustain him, despite the unlawful (and frustrating) failure of VICE to pay him in accordance with the 2015 Employment Agreement, the 2017 Commission Agreement, and the oral promises and assurances of VICE personnel from 2015-2017.

## VICE Refuses to Relinquish Possession of Bear

45.     Following VICE's termination of Mr. Martin, VICE also refused to return the Bear to him—an item with great personal meaning to Mr. Martin, and which cannot easily be compensated by money damages.

46.     Mr. Martin received the Bear's pelt as a gift in Spring 2010, and he arranged for and paid for a tanner to prepare the pelt and for a taxidermist to create the taxidermy Bear in Summer 2010.

47.     On Mr. Martin's instruction, the taxidermist delivered the Bear to VICE's Brooklyn, New York office, where it remained with Mr. Martin's permission through May 21, 2021, and where it continues to remain in VICE's possession, since VICE refused to return it to Mr. Martin, despite his demands and a September 29, 2021 offer, through counsel, to have a moving company remove the Bear at Mr. Martin's expense.

48.     Following his termination from VICE, through counsel, Mr. Martin demanded VICE return the Bear, and on July 1, 2021, and September 1, 2021 (again through counsel), Mr. Martin provided VICE with extensive documentation reflecting his superior right to possession of the Bear and that he is lawfully entitled to possess the Bear.

49.     VICE refused, and continues to refuse, to relinquish possession of the Bear.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

50.     Mr. Martin repeats and realleges each and every allegation made in the preceding paragraphs of this Complaint, as if fully set forth herein.

51.     Pursuant to the 2015 Employment Agreement, the 2017 Commission Agreement, and the oral promises and assurances in 2015-2017, VICE was obligated to pay Mr. Martin an annual salary of $150,000 from July 1, 2015, through May 21, 2021.

52.     Mr. Martin relied on the 2015 Employment Agreement, the 2017 Commission Agreement, and the oral promises and assurances in 2015-2017, and continuously performed in the capacity of Publisher, Munchies/VICE Food from July 1, 2015, through May 21, 2021.

53.     VICE breached the 2015 Employment Agreement, the 2017 Commission Agreement, and the oral promises and assurances in 2015-2017 by failing to pay Mr. Martin an annual salary of $150,000 from July 1, 2015, through the end of his employment with VICE on May 21, 2021.

54.     Throughout the relevant period, Mr. Martin duly performed all of his obligations pursuant to the 2015 Employment Agreement, the 2017 Commission Agreement, and the oral promises and assurances in 2015-2017

55.     By reason of the above breach of VICE's contractual obligations under the 2015 Employment Agreement, the 2017 Commission Agreement, and the oral promises and assurances in 2015-2017, Mr. Martin suffered substantial damages in a sum to be determined at trial, but in no event less than $443,110.83, plus interest.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Quantum Meruit)

56.     Mr. Martin repeats and realleges each and every allegation made in the preceding paragraphs of this Complaint, as if fully set forth herein.

57.     At VICE's request, from July 1, 2015, through May 21, 2021, Mr. Martin rendered performance of certain services as Publisher, Munchies/VICE Food.

58. VICE knew that Mr. Martin was performing the requested services and accepted such services. VICE also knew that Mr. Martin expected to be paid for such work.

59. VICE accepted and received the benefits of the services rendered by Mr. Martin but failed to compensate Mr. Martin in a manner commensurate with the value of the services rendered by Mr. Martin as Publisher, Munchies/VICE Food, including as compared with other similarly situated individuals.

60. Accordingly, Mr. Martin suffered substantial damages and VICE is liable to Mr. Martin in quantum meruit in a sum to be determined at trial, but in no event less than $443,110.83, plus interest.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Unjust Enrichment)

61. Mr. Martin repeats and realleges each and every allegation made in the preceding paragraphs of this Complaint, as if fully set forth herein.

62. From July 1, 2015, through May 21, 2021, Mr. Martin performed services as Publisher, Munchies/VICE Food, on behalf of and for the benefit if and at the specific request of VICE.

63. VICE encouraged and accepted Mr. Martin's services as Publisher, Munchies/VICE Food.

64. Although VICE reaped the full benefit of the services Mr. Martin provided as Publisher, Munchies/VICE Food, VICE has failed and refused to pay the full costs of said services, despite due demand.

65. VICE is thus unjustly enriched by accepting and retaining the benefits of Mr. Martin's services as Publisher, Munchies/VICE Food, but failing to pay the costs, and VICE is not entitled to the retention of such benefits.

66.     As a result, VICE is indebted to Mr. Martin in a sum to be determined at trial, but in no event less than $443,110.83, plus interest.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Violation of New York Labor Law for Failure to Pay All Wages Payable**
**and For Deductions from Wages NYLL Sections 191, 193, and 198)**

67.     Mr. Martin repeats and realleges each and every allegation made in the preceding paragraphs of this Complaint, as if fully set forth herein.

68.     Mr. Martin was an "employee" as the term is defined in Section 190 of the NYLL.

69.     VICE, collectively, are "employer[s]" as the term is defined in Section 190 of the NYLL.

70.     Mr. Martin was entitled to wages for labor and services from July 1, 2015, through December 31, 2015, at the annual rate of $150,000, which he did not receive from VICE, and received no wages from VICE during this time.

71.     Mr. Martin was entitled to wages for labor and services from January 1, 2016, through December 31, 2016, at the annual rate of $150,000, which he did not receive from VICE, and received only $14,166.61, a rate less than the applicable minimum wage.

72.     Mr. Martin was entitled to wages for labor and services from January 1, 2017, through December 31, 2017, at the annual rate of $150,000, which he did not receive from VICE, and received only $42,900.00.

73.     Mr. Martin was entitled to wages for labor and services from January 1, 2018, through December 31, 2018, at the annual rate of $150,000, which he did not receive from VICE, and received only $53,645.67.

74. Mr. Martin was entitled to wages for labor and services from January 1, 2019, through December 31, 2019, at the annual rate of $150,000, which he did not receive from VICE, and received only $138,000.

75. Mr. Martin was entitled to wages for labor and services from January 1, 2020, through December 31, 2020, at the annual rate of $150,000, which he did not receive from VICE, and received only $145,000.

76. Mr. Martin was entitled to wages for labor and services from January 1, 2021, through May 21, 2021, at the annual rate of $150,000, which he did not receive from VICE, and received only the prorated sum of $55,769.20.

77. By willfully, and without justification, deducting and failing to pay Mr. Martin wages to which he was entitled, VICE violated NYLL Section 193.

78. VICE's willful breach of the NYLL damaged Mr. Martin in a sum to be determined at trial, but in no event less than $443,110.83, together with liquidated damages equal to one hundred percent of the total wages due, plus attorneys' fees and pre-judgment interest, as provided by NYLL Section 198 due to VICE's deductions and failure to compensate Mr. Martin in accordance with the terms of his employment.

### AS AND FOR A FIFTH CAUSE OF ACTION
**(Violation of New York Labor Law for Failure to Pay the Minimum Wage
NYLL Sections 191, 193, 198, 650 *et seq.,* and Wage Orders 12 NYCRR 142, *et seq.*)**

79. Mr. Martin repeats and realleges each and every allegation made in the preceding paragraphs of this Complaint, as if fully set forth herein.

80. At all times relevant to this action, Mr. Martin was employed by VICE within the meaning of the NYLL, Sections 2 and 651, and the regulations and wage orders thereunder, including 12 NYCRR 142, *et seq.*

81. From July 1, 2015, through December 31, 2016, and as set forth above, VICE failed and willfully failed to pay Mr. Martin at a rate at least equal to the applicable New York State minimum wage rate for each hour worked in a week in violation of the New York Minimum Wage Act, and its implementing regulations and the New York Wage Orders.

82. Due to VICE's violations of the NYLL, Mr. Martin is entitled to recover from VICE, his unpaid minimum wage compensation, prejudgment interest, maximum liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to, *inter alia*, NYLL Sections 191, 198, and 650 *et seq.* and accompanying New York Wage Orders (12 NYCRR 142, *et seq.*) and regulations.

## AS AND FOR A SIXTH CAUSE OF ACTION
**(Violation of New York Labor Law for Failure to Pay Overtime Compensation NYLL Sections 191, 193, 198, 650 *et seq.*, and Wage Orders 12 NYCRR 142, *et seq.*)**

83. Mr. Martin repeats and realleges each and every allegation made in the preceding paragraphs of this Complaint, as if fully set forth herein.

84. At all times relevant to this action, Mr. Martin was employed by VICE within the meaning of the NYLL, Sections 2 and 651, and the regulations and wage orders thereunder, including 12 NYCRR 142, *et seq.*

85. From July 1, 2015, through December 31, 2016, Mr. Martin was a non-exempt employee who worked no less than fifty (50) hours each workweek.

86. From July 1, 2015 through December 31, 2016, and as set forth above, VICE failed and willfully failed to pay Mr. Martin overtime compensation rates of at least 1.5 times his regular rate and/or the prevailing New York State minimum wage rate for each hour worked in excess of forty (40) hours in a work week, in violation of the NYLL and the New York Minimum Wage Act, and its implementing regulations and New York Wage orders.

87.     Due to VICE's violations of the NYLL, Mr. Martin is entitled to recover from VICE, his unpaid overtime compensation, prejudgment interest, maximum liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to, *inter alia*, NYLL Sections 191, 198, and 650 *et seq.* and accompanying New York Wage Orders (12 NYCRR 142, *et seq.*) and regulations.

### AS AND FOR A SEVENTH CAUSE OF ACTION
**(Violation of New York Labor Law for Failure to Pay Spread-of-Hours Compensation NYLL Sections 191, 193, 198, 650 *et seq.* and Wage Orders 12 NYCRR 142, *et seq.*)**

88.     Mr. Martin repeats and realleges each and every allegation made in the preceding paragraphs of this Complaint, as if fully set forth herein.

89.     At all times relevant to this action, Mr. Martin was employed by VICE within the meaning of the NYLL, Sections 2 and 651, and the regulations and wage orders thereunder, including 12 NYCRR 142, *et seq.*

90.     From July 1, 2015, through December 31, 2016, and as set forth above, VICE failed and willfully failed to pay Mr. Martin at a rate at least equal to the applicable New York State minimum wage rate for each hour worked in a week in violation of the New York Minimum Wage Act, and its implementing regulations and New York Wage Orders.

91.     From July 1, 2015, through December 31, 2016, and as set forth above, VICE failed and willfully failed to pay Mr. Martin spread of hours compensation for days in which he worked in excess of ten (10) hours each day.

92.     Due to VICE's violations of the NYLL, Mr. Martin is entitled to recover from VICE, his unpaid spread of hours compensation, prejudgment interest, maximum liquidated damages, reasonable attorneys' fees, and costs of the action, pursuant to, *inter alia*, NYLL Sections

191, 198, and 650 *et seq.* and accompanying New York Wage Orders (12 NYCRR *et seq.)* and regulations.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
**(Violation of New York Labor Law for Failure to Issue Wage Statements
And/Or Accurate Wage Statements, NYLL Sections 195(3 ) and 198(1-d))**

93.     Mr. Martin repeats and realleges each and every allegation made in the preceding paragraphs of this Complaint, as if fully set forth herein.

94.     At all times relevant herein, Defendants failed and willfully failed to provide Mr. Martin with the wage statements and/or accurate wage statements required by NYLL Section 195(3).

95.     Mr. Martin is therefore entitled to and seeks recovery through this action to the maximum damages for this violation, plus reasonable attorneys' fees, and costs of the action, pursuant to, NYLL Section198.

### AS AND FOR AN NINTH CAUSE OF ACTION
**(Replevin)**

96.     Mr. Martin repeats and realleges each and every allegation made in the preceding paragraphs of this Complaint, as if fully set forth herein.

97.     Mr. Martin has title to and a possessory right and interest in the Bear.

98.     Mr. Martin's right in and title to the Bear is superior to any such purported rights asserted by VICE.

99.     VICE is in possession of the Bear in its office at 49 South 2nd Street, Brooklyn, New York 11249.

100.     Mr. Martin demanded that VICE return the Bear, beginning in June 2021. To date, VICE refused to return the Bear to Mr. Martin despite its demands.

101.    Accordingly, VICE is liable to Mr. Martin for replevin and required to return the

Bear to Mr. Martin forthwith.

### AS AND FOR A TENTH CAUSE OF ACTION
**(Declaratory Judgment Under 28 U.S.C. §§ 2201 and 2202)**

102.    Mr. Martin repeats and realleges each and every allegation made in the preceding

paragraphs of this Complaint, as if fully set forth herein.

103.    Under 28 U.S.C. § 2201, this Court has authority to decide actual controversies

within its jurisdiction.

104.    A justiciable controversy exists between Mr. Martin, on the one hand, and VICE,

on the other hand, as to which of them has good title to the Bear.

105.    Mr. Martin received the Bear's pelt as a gift in Spring 2010 and arranged for and

paid for a tanner to prepare the pelt and a taxidermist to create the taxidermy Bear in Summer

2010.

106.    On Mr. Martin's instruction, the taxidermist delivered the Bear to VICE's office at

49 South 2nd Street, Brooklyn, New York 11249, where it remained with Mr. Martin's permission

through May 21, 2021, and where it continues to remain in VICE's possession since VICE refused

to return it to Mr. Martin, despite his demands.

107.    Declaratory relief will resolve this controversy.

108.    As alleged herein, a real, substantial, and immediate controversy is presented

regarding title to and right to possession of the Bear, and Mr. Martin seeks a declaratory judgment

under 28 U.S.C. §§ 2201 *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure declaring

that Mr. Martin is the rightful owner of the Bear and has a right to immediately possess it.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### (Conversion)

109.    Mr. Martin repeats and realleges each and every allegation made in the preceding paragraphs of this Complaint, as if fully set forth herein.

110.    Mr. Martin is the owner of the Bear.

111.    VICE intentionally and without authority from Mr. Martin retained possession of the Bear at VICE's office at 49 South 2nd Street, Brooklyn, New York 11249, despite Mr. Martin's demand that VICE return the Bear to him.

112.    VICE wrongfully exercises dominion, custody, and/or control over the Bear, without authorization and in violation and interference with Mr. Martin's right to possession and ownership of the Bear.

113.    VICE's conversion of the Bear has damaged Mr. Martin in a sum to be determined at trial, since the Bear is unique and cannot simply be replaced.

**WHEREFORE,** Plaintiff Mr. Martin respectfully requests judgment in his favor and against Defendants, jointly and severally, as follows:

**A.**    On his First, Second, and Third Causes of Action, an award of damages in a sum to be determined at trial, but in no event less than $443,110.83, plus interest against Defendants;

**B.**    On his Fourth Cause of Action, the sum of wages Defendants improperly withheld and deducted in violation of the NYLL, in a sum to be determined at trial, but in no event less than $443,110.83, together with liquidated damages equal to one hundred percent of the total wages due, plus attorneys' fees and pre-judgment interest, as provided by NYLL Section 198;

**C.**      On his Fifth Cause of Action, the sum of all unpaid minimum wages Defendants failed to pay to Mr. Martin in violation of the NYLL, in a sum to be determined at trial, together with liquidated damages equal to one hundred percent of the total wages due, plus attorneys' fees and pre-judgment interest, as provided by NYLL Section 198;

**D.**      On his Sixth Cause of Action, the sum of all unpaid overtime compensation, together with liquidated damages equal to one hundred percent of the total wages due to Mr. Martin from Defendants, plus attorneys' fees and pre-judgment interest, as provided by NYLL Section 198;

**E.**      On his Seventh Cause of Action, the sum of all unpaid spread-of-hours compensation, together with liquidated damages equal to one hundred percent of the total wages due to Mr. Martin from Defendants, plus attorneys' fees and pre-judgment interest, as provided by NYLL Section 198;

**F.**      On his Eighth Cause of Action, maximum damages for under NYLL § 195(3) and 198(1-d) for VICE's failure to provide wage statements, and/or accurate wage statements, plus attorneys' fees and pre-judgment interest, as provided by NYLL Section 198;

**G.**      On his Ninth Cause of Action, the return of the Bear to Mr. Martin;

**H.**      On his Tenth Cause of Action, a declaration that Mr. Martin has good, marketable title to the Bear, free and clear from any other claims;

**I.**      Alternatively, on his Eleventh Cause of Action, a judgment in favor of Mr. Martin and against VICE for the value of the Bear, should Mr. Martin opt to transfer

ownership of the Bear to VICE or in the event VICE unlawfully transferred the Bear to a third party;

**J.**      An award of Mr. Martin's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

**K.**      Such other and further relief as to the Court may deem just and proper.

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: October 29, 2021
New York, New York

**GRANOVSKY & SUNDARESH, PLLC**

By: _____

Denise Rubin Glatter (DG-7742)
48 Wall Street, 11th Floor
New York, New York 10065
Telephone: 646-524-6001
dglatter@g-s-law.com

*Attorneys for Plaintiff John G. Martin*